SAMUEL H. BLAKE *versus* HIRAM BRACKETT *& others.*

The statute of 1856, c. 213, by repealing c. 148, § 46, R. S. of 1841, repealed
the statute of 1844, c. 88, amendatory of § 46.

After the passage of the statute of 1856, c. 213, there was no provision of law
requiring the justices selected for taking the disclosure of a poor debtor to
reside in the town where the disclosure is made, or an adjoining town.

A poor debtor having cited his creditor to attend his disclosure, and selected
one of the justices, the creditor appointed a justice not residing in the town
where the disclosure was to be made, nor in an adjoining town; the debtor
objected, and refused to disclose, but after an adjournment by the first justice
another was selected by a proper officer, and the debtor made disclosure and
took the oath : — *Held,* that as the justice selected by the creditor had a right
to act, the subsequent proceedings were a nullity, and in a suit on the bond
full damages were awarded.

BLAKE, having obtained judgment in February, 1857, against
Brackett, for $174,14 and costs, execution was issued Feb. 9,
the debtor arrested, and on the 21st he gave a poor debtor's
bond, with the other defendants in this action, as sureties.
On the 23d April, at ten o'clock in the forenoon, at Presque
Isle, the creditor having been duly notified, the debtor selected
Bradford Cummings as one of the justices to hear his dis-
closure, and the creditor's attorney selected C. M. Herrin, of
Houlton, as the other. The debtor's attorney objected to
Herrin acting, on the ground that he did not live in the place
where the disclosure was to be made, nor in an adjoining
town, and the debtor refused to submit himself to examination
unless another justice was selected in place of Herrin. The
creditor's attorney declined making any other selection, and,
the debtor still objecting to be examined, Herrin, at about
12 o'clock, returned home. Cummings, as one of the justices,
adjourned until afternoon, and then until ten o'clock the next
forenoon, when a second justice was selected by an officer
duly authorized to serve the precept on which the debtor
was arrested; the two justices, thus selected, examined the
debtor, administered the oath, and gave him a certificate of
discharge.

The case was submitted on a statement of facts, the Court

to render judgment thereon as the law requires, and to assess damages if any, on evidence to be introduced by the parties.

*Blake* and *Garnsey*, for the plaintiff.

Justice Cummings could adjourn but once to enable another justice to be selected. Statute, 1846, c. 215. The proceedings on the 24th were therefore null, if the record by Cummings of his action on the 23d was admissible. Such a record was admitted in *Barker* v. *Porter*, 39 Maine, 504.

The statute of 1844, c. 88, required both justices to reside in the town where disclosure is made, or an adjoining town; but was repealed by statute 1856, c. 213, § 2, leaving no limitation as to residence. It is true that the repealing statute, in referring to the Act of 1844, describes it as c. 88, of 1845; but there being no c. 88, of that year, this is clearly a clerical error. The statute of 1844, c. 88, amends and alters the provisions of c. 148, § 46, R. S., of 1841; and, as this section is repealed by the statute of 1856, the clerical error becomes of no importance.

Justice Herrin was therefore competent to act, and as the debtor refused to disclose on the 23d, when the justices were together, any subsequent proceedings, without a new notice to the creditor, were a nullity.

As to damages, since the statute of 1856, c. 263, now incorporated into R. S. of 1857, there must be a general default, and full damages.

*Waterhouse*, for defendants.

The Act of 1856 repeals c. 88, of the statutes of 1845. This does not affect the Act of 1844. The Act of 1856 omits to state where the justices shall reside, otherwise it is similar to the previous Act. Not being inconsistent with the Act of 1844, it does not repeal it by implication. Bouv. Law Dict., "Repeal"; 1 Kent's Com., 462.

If the Legislature made a blunder, the Court has no power to correct it: *Rex* v. *Mabe*, 30 Eng. Com. Law Rep., 145, (3 A. & E., 531;) *Lawton* v. *Hickman*, 58 C. L. R., 561, (9 Q. B., 563.) The erroneous reference is not cured, as might

have been done, by the insertion of the title of the Act of 1844, in that of 1856. Although the R. S. of 1841, c. 148, § 46, was doubtless repealed, the Act of 1844 remained in force.

But if the Court determines otherwise, the. damages are to be assessed by a jury, or at all events, are to be only the actual damages. R. S., 1857, c. 113, § 48.

The opinion of the Court was drawn up by

KENT, J. — The condition in the bond in suit has been broken, unless the debtor has complied with the requirements in reference to a disclosure and oath. He produces a copy of a record signed by two justices of the peace and quorum of Aroostook County, setting forth that after due and legal proceedings and adjudication, they administered to the debtor the oath required by law.

The plaintiff objects to this record as a discharge, because, as he says, the two justices who acted were not authorized to act, and therefore the discharge was invalid and not a compliance with the conditions of the bond. The facts proved are, that the creditor was present by attorney at the time and place named in the citation, and selected a justice who was present and ready, and offered to proceed in the disclosure. The debtor objected to the justice thus selected by the creditor, because he did not reside in the town where the disclosure was to be made, or in an adjoining town. The fact was, that he did not so reside. Thereupon the justice selected by the debtor, considering that the creditor had refused or neglected and unreasonably delayed to select a justice, adjourned to enable the debtor to procure the attendance of a justice; and on the next day, within twenty-four hours, another justice appeared, who was selected by an officer, according to law. The two justices, thus appointed, proceeded to act and to administer the oath and give the discharge.

If the law, at the time of the disclosure, did not require that the two justices should reside in the town, or in an adjacent town, then it is clear, and not disputed, that the exigency had

Blake *v.* Brackett.

not arisen authorizing the officer to appoint one of the justices. If it did thus require a residence, the appointment was legal. The decision of this question depends upon the construction of the second section of the Act of March 13, 1856, chap., 213; which repeals section 46 of chap. 148, of the Revised Statutes, and chapter 88 of the public laws of the year eighteen hundred and forty-*five*.

By referring to the 46th section of the 148th chapter of the R. S. of 1841, as printed in the volume, we do not find the provision in question, in reference to the residence of the justices. But this section was amended by the insertion of that provision, by Act of Feb. 23, eighteen hundred and forty-*four*, c. 88. The repealing Act of 1856, after providing in the 1st section, for the selection of justices, enacts, that " section 46, of chapter 148, of the Revised Statutes, and chapter 88, of the Public Laws of eighteen hundred and forty-*five*, are hereby repealed." It is admitted that there was no Act in the Public Laws of 1845, which was numbered chapter 88, and no statute of that year on the subject of poor debtors.

We deem it unnecessary to decide the question, whether a naked repeal of an Act, described only by the year of its enactment and the chapter of the volume, can be applied to an Act of a former year, numbered as described, and operate to repeal that Act. There can hardly be a doubt that there is an error in reference to the year; because the first section of the repealing statute refers to the subject-matter of the 88th chapter of the Laws of 1844, and the 46th section of c. 148 of the Revised Statutes, (which, it is admitted, is repealed by this section,) is almost identical with the first section of the law of 1856.

The case *In re Boothroyd,* 15 M. & W., 1, is very similar to this. In that case, a statute was referred to, in another statute modifying or repealing it, as the statute of 13 Geo. 3, reciting its title, which was identical with the title of a statute of 17 Geo. 3. The Court held that, as the title was set out and as there was no other statute so entitled, and no statute of 13 Geo. 3, which could be affected by the repealing Act, the

statute should be read as referring to the 17 Geo. 3, although it actually read 13 Geo. 3. In this English case, the *title* of the Act was set forth, which is not recited in the case at bar. But the other points are the same in both. We are not prepared to say that there are not sufficient points of identification to show that the clear intent of the Legislature was to repeal the Act of 1844, notwithstanding the year named is 1845.

But we are satisfied that the question is not to be decided solely by reference to the words repealing the Act of 1845. This section, in the first place, repeals distinctly the 46th section of the 148th chapter of the Revised Statutes. This is admitted.

What did that repeal of the 46th section embrace? What was the 46th section of the Revised Statute in 1856, when the repealing Act was passed? Was it only the words of the section as they stand in the printed volume, or did it include the section as it read after it was amended in 1844?

The Act of 1844, c. 88, it will be observed, does not contain any enactment of matter independent of the 46th section of the Revised Statutes. It does not say that it is enacted that the justices selected shall reside in the town, &c; but only enacts, that the 46th section of the 148th chapter of the Revised Statutes shall be amended by inserting certain words, so that the section as amended *shall be* as follows:— "Sec. 46. In all cases," &c.

It does not repeal that section. It only puts into it a certain provision, in certain words. It simply enlarges the section, retaining its identity as *the* 46th section of the Revised Statutes. It even retains its number, 46. It simply enacts that *the* 46th section of the Revised Statutes shall remain as such 46th section, with certain words inserted in different places; but it is still the 46th section. The title of the Act is "to amend the 46th section of the Revised Statutes."

The Act of 1856 recognizes the fact of the continued existence of the 46th section. The question returns, what was repealed by the repeal of the aforesaid forty-sixth section of

the Revised Statutes? It seems to us clear that it repealed the section as it was in fact after the amendment of 1844. If, then, we strike out of the repealing section of the Act of 1856, the words relating "to chapter 88, of the Public Laws of 1845," or treat them as void and inoperative, the words preceding, repealing the 46th section, will cover the whole ground, and repeal the section as it reads in the law of 1844.

If we hold that the 46th section, as it stands in the printed volume, is entirely repealed, and the new matter in chapter 88, of 1844, is unrepealed, we shall have only disjointed parts of sentences remaining, without any thing in sense or syntax to support them. This can not have been intended. The 46th section of c. 148, of the Revised Statutes, as amended by c. 88, of the laws of 1844, is repealed by c. 213, of the laws of 1856. The last named Act was in force when these proceedings were had, and their legality must be determined by the application of the provisions of that Act to the facts established.

No provision is there found in relation to the residence of the justices, and the only existing requirement was that the justices should be of the county. The creditor did not neglect or refuse to make such selection, but did select a proper person.

The contingency did not arise, which would have given a legal right to an officer to select, and therefore the selection made by the officer was an inoperative and void act.

The only remaining question relates to the damages to be assessed. By statute of 1848, c. 83, as construed in the case of *Winsor* v. *Clarke*, 36 Maine, 110, when a debtor had taken the prescribed oath before two justices of the peace and quorum, the damages to be assessed were the actual and real damage, and no more, although the magistrates had no juris- · diction for the purposes of the disclosure intended.

This decision was in 1853. In 1856, by c. 263, (R. S. of 1857, c. 113, § 48,) the Legislature revised the law and enacted, as one of the conditions, that the oath should have been allowed by and taken before justices "having jurisdiction

and legally competent to act *in the matter.*" The *matter* here referred to must be the disclosure and adjudication thereon, and not merely the general power of a justice to administer an oath.

It is clear, as before shown, that in this case the justices, who acted, had not jurisdiction, and were not legally competent to act, and their proceedings were not a performance of the condition of the bond, and do not authorize the Court or jury to assess the actual and real damage.

*Defendants defaulted.*

Judgment for full amount of execution, costs and fees of service, with interest thereon, against all the defendants; and a special judgment against the principal, Hiram Brackett, for interest at 20 per cent. per annum, according to § 38, c. 113, of Revised Statutes.

TENNEY, C. J., APPLETON, CUTTING, MAY and DAVIS, JJ., concurred.